# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**NAMICHA LACEY (#310652)**                                    **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, WARDEN**                                    **NO. 15-0085-BAJ-EWD**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 27, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

NAMICHA LACEY (#310652)                                    CIVIL ACTION

VERSUS

N. BURL CAIN, WARDEN                                       NO. 15-0085-BAJ-EWD

<u>**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

 This matter comes before the Court on Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.   The State has filed a Memorandum in Opposition to Petitioner's application.   There is no need for oral argument or for an evidentiary hearing.

 Petitioner Namicha Lacey challenges his 2008 conviction and sentence entered in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on one count of simple robbery, as enhanced by a multiple offender adjudication.   Petitioner contends that (1) he was provided with ineffective assistance of counsel because his trial attorney labored under a conflict of interest that resulted in his failure to effectively cross-examine and impeach one of the State's witnesses, (2) the prosecution failed to disclose impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), (3) he was provided with ineffective assistance of counsel when his trial attorney failed to request a mistrial after the State belatedly disclosed impeachment evidence that had been withheld from the defense, (4) his right to due process was violated on direct appeal when the Louisiana appellate courts mis-applied controlling principles of law in addressing his conflict of interest claim.

 A review of the record reflects that Petitioner was charged by Felony Bill of Information with one count of simple robbery of a Popeyes restaurant in Baton Rouge, Louisiana.   On the morning of

trial, May 12, 2008, the Bill of Information was amended, without objection, to reflect that the victim was one of the cashiers at the Popeyes establishment, Latonya Bindon.   In addition, on the morning of trial, the prosecution disclosed to the defense that Ms. Bindon had a prior felony conviction for forgery.   Upon the conclusion of the jury trial, Petitioner was convicted as charged.

After trial, on or about August 8, 2008, Petitioner's public defender moved to withdraw from representation in the case, asserting that she had recently discovered that she had previously represented Ms. Bindon several years earlier in connection with an unrelated criminal prosecution. The Motion to Withdraw was granted by the trial judge, and another attorney was appointed to represent Petitioner.

A Motion for New Trial was thereafter filed on Petitioner's behalf on January 26, 2009, seeking to overturn the trial proceedings because of the purported conflict of interest, and an evidentiary hearing was held thereon on February 26, 2009.   Based upon the testimony and argument adduced at the hearing, the Motion for New Trial was granted by the trial judge.   Notwithstanding, the State thereafter pursued supervisory review in connection with that determination and, pursuant to a Ruling of the Louisiana Court of Appeal for the First Circuit dated July 31, 2009, the appellate court reversed the decision of the trial court.

Upon remand to the trial court, Petitioner was thereafter sentenced as a fourth felony offender to sixty-four years in confinement, without the benefit of probation, parole or suspension of sentence.

Petitioner appealed, asserting a counseled claim that the Motion for New Trial should have been granted based upon the existence of a conflict of interest that resulted in actual prejudice to Petitioner and a *pro se* claim that Petitioner was provided with ineffective assistance of counsel at trial because of his attorney's failure to effectively impeach and/or challenge the credibility of Latonya

Bindon based upon her prior conviction.[1]    On June 29, 2011, the Louisiana Court of Appeal for the First Circuit affirmed Petitioner's conviction and sentence.    *See State v. Lacey,* 2011 WL 3658407 (La. App. 1 Cir. June 29, 2008).    Petitioner thereafter filed an application for supervisory review in the Louisiana Supreme Court, which Court denied review without comment on April 27, 2012.    *See State ex rel. Lacey v. State*, 86 So.3d 621 (La. 2012).    Upon the failure of Petitioner to thereafter file an application for a writ of certiorari in the United States Supreme Court, his conviction and sentence became final on July 26, 2012 upon expiration of the ninety-day period allowed for him to do so.    *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003) (recognizing that a conviction becomes final for federal purposes after the 90-day period allowed for a petitioner to proceed in the United States Supreme Court if he has not pursued such relief).

On or about June 27, 2012, Petitioner filed an application for post-conviction relief ("PCR") in the state trial court, wherein he asserted the claims that (1) the State withheld impeachment evidence in violation of *Brady v. Maryland, supra*, (2) he was provided with ineffective assistance of counsel when his attorney failed to request a mistrial based on the State's failure to produce *Brady* material, and (3) his right to due process was denied on direct appeal when the appellate court failed to follow "the controlling principle(s) of law" in connection with his claim regarding a conflict of interest on the part of his trial attorney.    The State filed Procedural Objections in response to Petitioner's PCR application and, pursuant to Ruling dated April 18, 2013, the trial court accepted a Recommendation issued by the state court Commissioner on October 11, 2012 and denied Petitioner's PCR application. Petitioner then filed, on or about May 15, 2013, an application for supervisory review before the

---

1    The record of the state court proceedings that has been provided to the Court does not include copies of certain pleadings filed in connection with Petitioner's appeal and post-conviction relief proceedings before the state district and appellate courts.    Notwithstanding, Petitioner has attached pertinent copies of these proceedings to his federal habeas corpus application, which the Court finds to be sufficient for this review.

Louisiana Court of Appeal for the First Circuit.    That Court denied review, without comment, on July 15, 2013.    *See State v. Lacey*, 2013 WL 12120729 ((La. App. 1 Cir. July 15, 2013).    Petitioner also filed a subsequent timely application for further review before the Louisiana Supreme Court, which Court denied review, again without comment, on March 14, 2014.    *See State ex rel. Lacey v. State*, 134 So.3d 1190 (La. 2014).

Finally, on or about February 12, 2015, Petitioner filed his federal habeas corpus application before this Court.    As discussed hereafter, the Court concludes that Petitioner's application should be dismissed, in part as procedurally defaulted and in part as being without merit.

## I.    Factual Summary

The following factual summary is taken from the opinion of the Louisiana Court of Appeal for the First Circuit:

> On the evening of December 14, 2007, Latonya Bindon was working as a cashier at the Popeyes restaurant on Florida Boulevard in Baton Rouge, Louisiana, when she observed the defendant, a regular patron at the restaurant, arrive.    The defendant initially went to use the restroom facility.    He later walked up to the counter and asked to purchase an order of mashed potatoes.    Bindon rang up the food item and opened the register to complete the transaction.    The defendant rushed behind the counter, pushed Bindon aside, removed the money from the cash register, and fled.    Aldreka Brown, another Popeyes employee, was mopping the lobby when the incident occurred.    She observed the entire incident.    According to Brown, the defendant first attempted to leave through the door on the right side of the restaurant, but it was locked, so he exited through the opposite door.
>
> Bindon and Brown both recognized the defendant as a regular patron of the restaurant and successfully picked him out of a photographic lineup as the individual who robbed Bindon.    On December 16, 2007, the defendant was arrested after he returned to the Popeyes restaurant to use the restroom.
>
> During the trial, Bindon and Brown both identified the defendant, in open court, as the individual who committed the robbery.

*State v. Lacey, supra*, 2011 WL 3658407 at *2.

Based upon the evidence and testimony elicited at trial, the jury found Petitioner guilty of simple robbery as charged.

## II. Applicable Law and Analysis

<u>Standard of Substantive Review</u>

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d).   Under this statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.   *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the petitioner's case or reaches a decision based on an unreasonable factual determination.   *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).   Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness.   *Id.   See also Williams v. Taylor, supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").   State court determinations of underlying factual issues are presumed correct, and Petitioner has the burden to rebut the presumption with clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.   *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *McCamey v. Epps*, 658 F.3d 491, 497 (5th Cir. 2011).   Review under § 2254(d)(1) focuses on what a state court knew and did.   *Cullen v. Pinholster, supra*, 563 U.S. at 182.   "[E]vidence introduced in federal court

has no bearing on § 2254(d)(1) review.   If a claim has been adjudicated on the merits by a state court, a federal habeas corpus petitioner must overcome the limitation of § 2254(d)(1) based on the record that was before that state court."   *Id.* at 184.   State court decisions are measured against the Supreme Court's precedents as of "the time the state court renders its decisions."   *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).   *Pinholster* prohibits a federal court from using evidence that is introduced for the first time at a federal-court evidentiary hearing as the basis for concluding that a state court's adjudication is not entitled to deference under § 2254(d).   *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011).[2]

To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision "applies a rule that contradicts [such] law" and how the decision "confronts [the] set of facts" that were before the state court.   *Williams v. Taylor*, 529 U.S. 362, 405, 406 (2000). If the state court decision "identifies the correct governing legal principle" in existence at the time, a federal court must assess whether the decision "unreasonably applies that principle to the facts of the prisoner's case."   *Id.* at 413.

The State contends that, applying this standard to Petitioner's claims, there is no basis for the granting of habeas corpus relief.

Petitioner's Claim No. 1, Regarding A Conflict Of Interest That Adversely Affected
Counsel's Performance At Trial And Resulted In Ineffective Assistance, Is Without Merit

Petitioner first asserts that the Motion for New Trial filed by his attorney after trial should have been granted based upon the conflict of interest that existed with his trial counsel, which conflict adversely affected his attorney's performance.   Petitioner further asserts a related claim that his

---

2      The Fifth Circuit Court of Appeals has held that a federal court may properly hold an evidentiary hearing when it determines, based solely on the state court record, that the state court's determination was contrary to or involved an unreasonable application of clearly established federal law.   *Bobby Smith v. Burl Cain*, 708 F.3d 628, 634 (5th Cir. 2013).

attorney provided ineffective assistance by failing to challenge the credibility of Latonya Bindon on cross-examination by questioning her about her prior felony conviction.

The Sixth Amendment provides that a criminal defendant shall have the right to "the Assistance of Counsel for his defence." This right has been accorded, "not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic*, 466 U.S. 648, 658 (1984). It follows from this that assistance that is found to be ineffective in preserving fairness does not meet the constitutional mandate. *See Strickland v. Washington*, 466 U.S. 668, 685 (1984). It also follows, in contrast, that defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation. *See Mickens v. Taylor*, 535 U.S. 162, 166 (2001). Thus, as a general matter, it is recognized that a defendant alleging a Sixth Amendment violation must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*., *quoting Strickland v. Washington, supra*, 466 U.S. at 694.

Notwithstanding the foregoing, there is an exception to the general rule that a showing of prejudice is required. Specifically, the United States Supreme Court has concluded that a criminal defendant is spared the need of showing a probable effect upon the outcome, and that such an adverse effect is simply presumed, where assistance of counsel has been denied entirely or during a critical stage of the proceedings. Specifically, when this has occurred, the likelihood that the verdict is unreliable is found to be so high that a case-by-case inquiry is unnecessary. *See United States v. Cronic, supra*, 466 U.S. at 658-59. But only in "circumstances of that magnitude" has the Supreme Court dispensed with the need for an individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict. *See id*. at 659 n. 26. As pertinent to the instant case, "circumstances of that magnitude" have been found to arise when the defendant's attorney has "actively represented conflicting interests," as when the attorney's duty to represent his client is in

conflict with his duty to represent the interests of another client.   *See Cuyler v. Sullivan,* 446 U.S. 335 (1980); *Mickens v. Taylor, supra* (discussing cases).

The *Mickens* case is instructive in this context because in *Mickens*, the Supreme Court addressed a situation that is somewhat analogous to that presented herein.   In *Mickens*, after the petitioner was convicted of murder, his post-trial habeas attorney discovered that the attorney representing the petitioner at trial had been appointed to represent the murder victim in an unrelated criminal proceeding a mere month prior to being appointed to represent the petitioner.   That representation had ended with the death of the murder victim, but the same judge had then appointed the same attorney to represent the petitioner charged with the killing.   Whereas the issue in the *Mickens* case focused upon the failure of the appointing judge to raise a question regarding the potential conflict of interest in that case, the Court also addressed the appropriate standard for evaluating the conflict issue relative to the petitioner.    In doing so, the Court noted the general rule that in evaluating the assistance of counsel provided under the Sixth Amendment, some showing of prejudice is normally required to support a claim of ineffective assistance.   The Court further noted that a showing of prejudice is not required in circumstances of such magnitude that prejudice should be presumed, as "when the defendant's attorney actively represented conflicting interests."    *Id*. at 166. Notwithstanding, the Court concluded that the situation presented in *Mickens*, where the petitioner's attorney had only briefly represented the victim before representing the petitioner and was not shown to have had any divided loyalties that adversely affected his performance, did not rise to a "circumstance[] of that magnitude."   Accordingly, the Court concluded that the rule set forth in *Cuyler v. Sullivan*, *supra*, 446 U.S. 335 (1980) established the appropriate standard, *i.e.*, that prejudice is not presumed unless the petitioner shows that a conflict of interest existed that "significantly affected

counsel's performance – thereby rendering the verdict unreliable."   *Mickens v. Taylor, supra*, 535 U.S. at 173.[3]

      In addressing Petitioner's Motion for New Trial in this case, both in connection with the State's application for supervisory review upon the initial grant of the motion in the trial court and on direct appeal of Petitioner's conviction and sentence thereafter, the Louisiana Court of Appeal for the First Circuit correctly relied upon the standard set forth in *Cuyler v. Sullivan, supra*, and concluded that Petitioner had failed to show that his attorney's prior representation of the State's witness, Latonya Bindon, had created a conflict of interest that adversely affected counsel's performance.   The Court specifically noted that Petitioner's attorney testified at the hearing on the Motion for New Trial that she had no recollection during or prior to trial that she had previously represented Ms. Bindon and that, as a result, her conduct during trial was in no way affected by any divided loyalty resulting from the fact of the prior representation.   She further testified that it was only after the trial, when she asked her secretary to conduct a records search, that she learned that she had represented Ms. Bindon more than four years previously in connection with an unrelated criminal matter that had resulted in a guilty plea.   Whereas she testified that she normally conducts a search for potential conflicts in advance of trial in connection with anticipated witnesses, she apparently had not done so in this case, possibly because Ms. Bindon was not named as the victim in the case until the morning of trial when the Bill

---

3      In *Cuyler*, a situation was presented where an attorney simultaneously represented multiple defendants in separate trials but made no objection prior to trial regarding an inability to provide adequate representation to all of them.   The Court ultimately concluded that in the absence of an objection regarding the existence of a conflict of interest, "a defendant must demonstrate that 'a conflict of interest actually affected the adequacy of his representation."   In reaching this conclusion, the Court distinguished the situation presented in *Holloway v. Arkansas*, 435 U.S. 475 (1978), where an attorney objected prior to trial that he was unable to provide adequate representation to multiple clients, an objection that was rejected in the trial court but was ultimately upheld by the Supreme Court.   The *Holloway* decision has been interpreted as creating "an automatic reversal rule only where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict."   *See Mickens v. Taylor, supra*, 535 U.S. at 168.

of Information was amended to change the name of the victim from "Popeyes" to "Latonya Bindon."

Finally, she testified that her failure to cross-examine Ms. Bindon regarding the witness' prior

conviction was entirely because she forgot to do so, not because of any decision on her part, conscious

or unconscious, to protect the witness in light of the prior representation.

Based on the foregoing, the Court finds no error in the determination of the state appellate court

relative to Petitioner's Motion for New Trial.    The appellate court, in relying upon *Cuyler v. Sullivan*,

*supra*, employed the correct legal standard and specifically found that "the defendant did not

demonstrate that an actual conflict of interest adversely affected his counsel's performance during the

trial."    In doing so, the court stated:

> Ms. Hebert's [Petitioner's trial counsel] testimony at the hearing established that the
> prior representation, which she did not recall, did not affect her representation of the
> defendant.    Ms. Hebert specifically stated that she failed to cross-examine the victim
> about her prior conviction, not because of the prior representation, but because she
> forgot about it during the trial.    Ms. Hebert also testified she had not remembered the
> prior representation until after the defendant's trial ended and she checked court
> records.    Because Ms. Hebert was completely unaware of any loyalty owed to the
> victim, as her former client, during cross-examination, the situation was clearly not one
> of divided loyalties.    There is no showing in the record that Ms. Hebert was ever faced
> with a situation in which she was forced to choose between the interests of the
> defendant and the victim, her former client.

*State v. Lacey, supra*, 2011 WL 3658407 at *5.    This Court finds no error in the application of

established federal law to the state court's conclusion in this regard.    *See also Lee v. Cain*, 519 Fed.

Appx. 869 (5th Cir. 2013) (applying *Cuyler v. Sullivan* and rejecting a claim regarding a conflict of

interest where the attorney representing the petitioner had represented a "key witness … during a

preliminary hearing in the same case").

Petitioner also asserts, in a related claim, that the failure of his trial attorney to cross-examine

Ms. Bindon and challenge her credibility based upon the prior felony conviction amounted to

ineffective assistance that warrants the grant of habeas relief in this case.    In this regard, a habeas

petitioner who asserts that he has been provided with ineffective assistance of counsel must

affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, *supra,* 466 U.S. at 687.   Petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel.   *Id*.

To satisfy the deficiency prong of the *Strickland* standard, Petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.   *See, e.g., Brown v. Dretke*, 419 F.3d 365, 374 (5th Cir. 2005).   The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy.   *See id.   See also Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988).   This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial.   *Strickland v. Washington, supra*, 466 U.S. 689; *Martin v. McCotter,* 796 F.2d 813, 817 (5th Cir. 1986).   Great deference is given to counsel's exercise of professional judgment.   *Id*.

If Petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors.   *See Premo v. Moore*, 562 U.S. 115, 122 (2011) ("To establish ineffective assistance of counsel, 'a defendant must show both deficient performance by counsel and prejudice").   To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for Petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding.   *Strickland v. Washington, supra*, 466 U.S. at 693.   Rather, Petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.   *Williams v. Taylor*, 529 U.S. 362, 391 (2000).   A habeas petitioner need not show

that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id.* Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The above showing is one that Petitioner cannot make in the instant case. Petitioner asserts in this regard that his trial attorney failed to effectively challenge Latonya Bindon's credibility by questioning her about her prior forgery conviction. According to Petitioner, such questioning would likely have resulted in the jury entering a verdict of not guilty in connection with the offense charged. However, pretermitting consideration of whether the failure of Petitioner's attorney to mount such a challenge to Ms. Bindon's credibility constituted deficient performance within the meaning of *Strickland*, *i.e.*, whether it fell outside the "wide range of reasonable professional assistance" that *Strickland* establishes as the standard for deficient performance, *see Garcia v. Stephens*, 793 F.3d 513, 524 (5th Cir. 2015), the Court finds that Petitioner has failed to show that he was prejudiced by his attorney's alleged failure. Specifically, the Court is unable to conclude that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Williams v. Taylor, supra*, 529 U.S. at 391. As noted in the Commissioner's Report and as pointed out by the State, Petitioner was identified as the perpetrator of the offense by two independent witnesses who knew him well as being a frequent visitor to the Popeyes restaurant and who identified him from both a photographic lineup and at trial. There is therefore little likelihood that questioning one of the witnesses about a single prior conviction from years previously would have altered the conclusion of the jury that Petitioner was guilty of the offense charged. Further, having found that there has been no showing of prejudice resulting from any asserted deficiencies in counsel's performance in this case,

it is not necessary for the Court to reach any conclusion regarding whether such deficiencies rise to the level of ineffective assistance within the meaning of *Strickland v. Washington, supra.* *See Green v. Johnson*, 160 F.3d 1029 (5th Cir. 1998) ("The failure to prove either deficient performance or actual prejudice forecloses an ineffective assistance claim"). Accordingly, Petitioner's claim in this regard should be rejected.

Petitioner's Claims Nos. 2 And 3, Regarding The Late Disclosure
Of Impeachment Evidence In Violation of *Brady v. Maryland, Supra*, And
The Failure Of His Attorney To Request A Mistrial, Are Procedurally Barred

Petitioner next asserts that his constitutional rights were violated because the State withheld from the defense prior to trial the evidence of the prior felony conviction of the State's key witness, Ms. Bindon, and because his attorney failed to question Ms. Bindon about the prior conviction on cross-examination. In this regard, it appears that on the morning of trial, after the commencement of *voir dire*, the prosecutor approached Petitioner's attorney and advised that the State had just obtained the rap sheet of Ms. Bindon which disclosed that the witness had a prior felony conviction for forgery. The matter then proceeded to trial and, as noted above, Petitioner's attorney forgot to question Ms. Bindon on cross-examination relative to the prior conviction. According to Petitioner's attorney, such forgetfulness may have resulted in part from a perceived need for a change in trial strategy that morning resulting from Petitioner's decision not to testify and in part from the fact that she had just obtained the information about Ms. Bindon and had not incorporated it into her trial preparations. Notwithstanding, Petitioner contends that the State's failure to disclose the impeachment evidence prior to trial and his attorney's failure to effectively cross-examine Ms. Bindon warrant the overturning of his conviction.

In response to these claims, the State contends that consideration thereof is barred in this Court by reason of the determination of the state trial court that the claims are procedurally defaulted. In this regard, when a state court decision to deny post-conviction relief rests on a state procedural ground

that is independent of the federal question raised by Petitioner and is adequate to support the judgment, the federal court lacks jurisdiction to review the merits of Petitioner's federal claim. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Moore v. Roberts*, 83 F.3d 699, 701 (5th Cir. 1996). The independent and adequate state ground doctrine "applies to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement." *Coleman v. Thompson, supra*, 501 U.S. at 729-730:

> In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731-32, *citing Rose v. Lundy*, 455 U.S. 509, 518, (1982); *Moore v. Roberts, supra*, 83 F.3d at 703. This rule applies even if the state court addresses the substance of the claim in the alternative. *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989); *Fisher v. Texas,* 169 F.3d 295, 300 (5th Cir. 1999).

In order for a state procedural bar to provide an "independent" basis for dismissal, the state court adjudication of a habeas petitioner's claim must have been explicitly based on a state procedural rule. *Amos v. Scott*, 61 F.3d 333, 338 n. 15 (5th Cir. 1995). *See also Moore v. Roberts, supra*, 83 F.3d at 702; *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Walker v. Martin*, 562 U.S. 307, 1127-28 (2011); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Marks v. Terrell*, 2014 WL 1246065, *8 (E.D. La. Mar. 24, 2014). The state procedural bar is presumptively adequate when the state court expressly and regularly relies upon it in deciding not to review claims for collateral relief. *Glover v. Cain, supra*, 128 F.3d at 902. Further, the procedural default doctrine presumes that the "state court's [express] reliance on a procedural bar functions as an independent and adequate ground in support of the judgment." *Sones v. Hargett, supra*, 61 F.3d at 416. Even a discretionary state procedural rule can qualify as an adequate basis for barring federal

habeas review.  *Coleman v. Cain*, 2014 WL 348541, *5 (E.D. La. Jan. 31, 2014), *citing Beard v. Kindler*, 558 U.S. 53 (2009).  As stated in *Beard, supra*, "a discretionary rule can be 'firmly established' and 'regularly followed' – even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not in others."  *Id*. at 60-61.  Notwithstanding, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review.  *See Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996).  Further, a habeas petitioner may rebut the presumption of adequacy by establishing that the procedural rule is not "strictly or regularly followed" or, notwithstanding, by demonstrating (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson, supra*, 501 U.S. at 750; *Moore v. Roberts, supra*, 83 F.3d at 702.

It appears in this case that the State's argument is well-founded.  Specifically, in addressing this issue, the state court Commissioner's Report initially noted that the State had asserted the procedural defense relative thereto and was arguing, based upon La. Code Crim. P. art. 930.4(B) and (C), that the claims "could and should have been addressed in [Petitioner's] appeal."  The state court Commissioner thereafter explicitly relied upon the state procedural rule in dismissing these claims, concluding in the body of the Report that Petitioner "neglected to urge either claim" in his appellate brief on direct appeal and that "these claims are procedurally barred."  In addition, in the conclusion of the Report, the Commissioner recommended that "the State's procedural objections be granted" relative to these issues and that the claims be dismissed without a hearing.  The state trial judge thereafter dismissed Petitioner's PCR application on April 18, 2013, stating that "[t]he court finds adequate and adopts as its own the reasons set forth in the Commissioner's Recommendation."  Thus, it appears that the state court expressly relied upon the referenced procedural rule in rejecting Petitioner's claims.  In addition, this Court finds that article 930.4 is regularly followed under

circumstances substantially similar to that presented herein. *See Parks v. Cain*, 2014 WL 505329, *8 (E.D. La. Feb. 6, 2014 ) (applying procedural bar in connection with a claim that the petitioner was not allowed to testify at trial); *Simmons v. Cain*, 2008 WL 2185422 (E.D. La. May 20, 2008) (same); *Jones v. Cain*, 2010 WL 3312592, 5-6 (E.D. La. July 29, 2010) (applying procedural bar in connection with a claim of ineffective assistance of counsel); *Smith v. Cain*, 2013 WL 6669816, *4 (E.D. La. Dec. 18, 2013) (same).

As noted above, Petitioner can overcome the preclusion established by a procedural default only by demonstrating (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson, supra*, 501 U.S. at 750; *Moore v. Roberts,* 83 F.3d 699, 702 (5th Cir. 1996). To establish "cause," Petitioner must show that some objective factor external to the defense prevented him from timely raising his claims in state court. *See Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992). To establish prejudice, Petitioner must show, "not merely that the [asserted] errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Neither "cause" nor "prejudice" has been argued or shown in the instant case that would support this Court's disregard of his procedural default. Further, to demonstrate that a failure to consider the claim will result in a "fundamental miscarriage of justice," a habeas petitioner must show, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 645 (5th Cir. 1999). To establish such actual innocence, Petitioner must "support his allegations with new, reliable evidence that was not presented at trial and must show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* In the absence of any such showing in this case, Petitioner's *Brady* claim and his related ineffectiveness claim are not properly before this Court.

Specifically, this Court finds that the state court's express invocation of the procedural rule to dispense with a substantive consideration of these claims asserted on post-conviction review acts as an independent and adequate bar that precludes this Court's consideration thereof.

In addition to the foregoing, and in the alternative, even were this Court to conclude, in connection with the petitioner's Claim No. 3 – regarding the alleged ineffective assistance of his trial attorney – that article 930.4 is not adequate in this context to operate as an effective procedural bar,[4] the Court would nonetheless recommend dismissal of this claim upon substantive review. Specifically, Petitioner asserts in this regard that his attorney provided ineffective assistance by failing to move for a mistrial after the prosecution produced the rap sheet of Latonya Bindon on the morning of trial.    Notwithstanding, in Louisiana, a mistrial is a drastic remedy that is granted only upon a showing that the defendant has suffered such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial.    Specifically, La. Code Crim. P. art. 775 provides that a mistrial shall be ordered "when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial."    In addition, federal courts have recognized that a decision not to move for a mistrial is generally one of trial strategy.   *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008) ("It is oft-recognized that the decision not to seek a mistrial is frequently a strategic one"); *Franklin v. Thompson*, 2007 WL 3046642, *2 (E.D. La. Oct. 17, 2007); *Brooks v. Cain*, 2007 WL 2990935, *17 (E.D. La. Oct. 11, 2007).   The United States Fifth Circuit Court of Appeal has noted that an attorney's "conscious and informed" strategic decision not to seek a mistrial "'cannot be the basis for constitutionally ineffective assistance unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'"   *Ward v. Dretke*, 420 F.3d 479, 491 (5th Cir. 2005), *quoting Martinez v. Dretke*,

---

4    *See Graffia v. Cain*, 2010 WL 3952027, *10-11 (E.D. La. July 28, 2010) (finding article 930.4 to be inadequate in the context of a claim of ineffective assistance of counsel); *Orange v. Cain*, 2009 WL 938909, *8 (E.D. La. April 6, 2009) (same); *Bell v. Cain*, 2002 WL 31002831, *8 (E.D. La. Aug. 29, 2002) (same).

404 F.3d 878, 885 (5th Cir. 2005).   In making that decision, counsel is "required to balance the harm caused by the [improper conduct] against the legitimate possibility that a new trial would present less propitious prospects for his client."   *Id.*   As with all decisions concerning matters of strategy and defense tactics, this court must apply the "strong presumption" that such decisions fall "within the wide range of reasonable professional assistance."   *Strickland v. Washington, supra,* 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.   *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999), *citing Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994).   Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.   *Strickland v Washington, supra, 466 U.S. at 689.*   The burden is on Petitioner to demonstrate that counsel's strategy was unreasonable.   *Id.*   Petitioner has made no such showing in the instant case.

In addition to the foregoing, as with most claims of ineffective assistance of counsel, an essential showing is that some prejudice has resulted from the conduct complained of.   In the instant case, in light of the disclosure of Ms. Bindon's rap sheet to Petitioner's counsel on the morning of trial, it is unlikely that a motion for mistrial would have been granted by the trial court.   Specifically, inasmuch as Petitioner's counsel then had available to her the pertinent information that could have been utilized to effectively question Ms. Bindon regarding her prior conviction, the trial court would have concluded that the late disclosure of this information did not rise to the level necessary to justify the drastic remedy of a mistrial.   As noted by the State, Louisiana courts have routinely denied motions for mistrial based on alleged *Brady* violations when the mere late disclosure of evidence has nonetheless allowed for it to be effectively used at trial.   *See State v. Verret*, 960 So.2d 208 (La. App. 1 Cir.), *writ denied*, 967 So.2d 520 (La. 2007); *State v. Taylor*, 97 So.3d 522 (La. App. 5 Cir. 2012). Accordingly, inasmuch as a motion for mistrial would not have been granted, it is axiomatic that the

failure to make such a motion was not ineffective assistance on the part of Petitioner's attorney. Moreover, as previously discussed, even had Ms. Bindon's credibility been challenged at trial relative to the prior conviction, it is unlikely that such a challenge would have altered the outcome of trial. Thus, the state court Commissioner did not err in concluding that no prejudice resulted from counsel's performance in this regard.   In light of the testimony of the two independent eyewitnesses – who were both very familiar with Petitioner based on previous encounters – that they observed Petitioner forcibly take money from the register of the Popeye's restaurant on the date of the offense, there was more than sufficient evidence to support the verdict rendered, and there is little likelihood that a years-old prior forgery conviction of one of the witnesses would have altered that determination or called into question the fairness of the trial.   Accordingly, this assertion by Petitioner lacks merit and should be denied.

Petitioner's Claim No. 4, That He Was Denied Due Process
<u>Because Of The Mis-Application Of Law On Direct Appeal, Is Without Merit</u>

Finally, Petitioner asserts that he was denied due process on direct appeal because the Louisiana First Circuit Court of Appeal allegedly applied the incorrect legal standard in resolving his conflict of interest claim and in rejecting the arguments asserted on his behalf in connection with his Motion for New Trial.   According to Petitioner, the state appellate court should have applied the legal principles set forth in the Fifth Circuit decisions of *Beets v. Scott*, 65 F.3d 1258 (5th Cir. 1995) (*en banc*), and *Perillo v. Johnson*, 205 F.3d 775 (5th Cir. 2000).   Whereas Petitioner asserted this claim in his post-conviction relief application, the state trial court rejected the claim, finding that Petitioner had failed to state a claim upon which relief could be granted inasmuch as he had failed to clearly set forth the nature of the due process interest that he asserted had been denied to him.

Petitioner's argument is misplaced.   Specifically, this claim has already been addressed and largely subsumed by the analysis utilized by this Court in resolving Petitioner's Claim No. 1, above, relative to whether the conflict of interest created by his attorney's prior legal representation of Latonya

Bindon adversely affected his attorney's performance and rendered his trial fundamentally unfair. Specifically, this Court has concluded that the state court correctly employed the standard set forth in *Cuyler v. Sullivan, supra*, which requires that a defendant show both that an actual conflict of interest existed and that the conflict adversely affected his attorney's representation.    As a result, it appears that Petitioner was afforded both procedural and substantive due process in connection with this claim. Further, to the extent that Petitioner seeks to argue that the Louisiana courts should have employed the rationale and analysis set forth in the Fifth Circuit decisions of *Beets v. Scott, supra, and Perillo v. Johnson, supra,* this argument is also without merit.    In *Beets*, the Fifth Circuit addressed a situation that is not presented in the instant case, *i.e.*, a situation wherein the *personal* interest of the attorney himself potentially conflicted with the duty owed to his client, specifically because the attorney had obtained the media rights to his client's story and so had a potential interest in the outcome.    In such a circumstance, the Fifth Circuit Court concluded that *Strickland v. Washington, supra*, provided a better procedural framework for resolving the issue than did *Cuyler v. Sullivan, supra*. Notwithstanding, inasmuch as the issue in the instant case involved only the potential duty owed by Petitioner's defense attorney to multiple successive clients, the *Cuyler* decision is clearly applicable and was correctly applied.    Further, as for Petitioner's reliance on *Perillo v. Johnson*, this Court interprets *Perillo* as merely employing the *Cuyler* analysis to the particular facts of that case – where the attorney simultaneously represented both the petitioner and a witness who was involved in the events surrounding the criminal offense charged – and concluding that an actual conflict of interest existed that potentially adversely affected counsel's performance.    In doing so, the *Perillo* Court held that, to show that a conflict of interest has had an adverse effect upon an attorney's representation, "a petitioner must demonstrate that some plausible defense strategy or tactic might have been pursued but was not, *because* of the conflict of interest.  *Id*. at 449 (emphasis added).    In the instant case, in light of the fact that Petitioner's attorney testified that she had no recollection of having previously

represented Ms. Bindon, there is no plausible suggestion that the attorney's representation was in any way affected by such prior representation.    Accordingly, Petitioner's claim in this regard is clearly without merit and should be rejected.

### Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."    28 U.S.C. § 2253(c)(1)(A).    Although Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability.    *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).    A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.    28 U.S.C. § 2253(c)(2).    In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."    *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).    In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original).    In the instant case, the Court finds that reasonable jurists would not debate the denial of Petitioner's § 2254 application or the correctness of the substantive or procedural ruling.    Accordingly, it is appropriate that, in the event that Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

## __RECOMMENDATION__

It is recommended that Petitioner's application for habeas corpus relief be denied, with prejudice.   It is further recommended that in the event that Petitioner seeks to pursue an appeal, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on February 27, 2018.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**